UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOE MONTOYA,

        Plaintiff,

v.                                                                     Case No. 8:21-cv-176-AEP

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

        Defendant.
_____/

**ORDER**

Plaintiff seeks judicial review of the denial of his claim for a period of disability and disability insurance benefits ("DIB"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I.**

**A.    Procedural Background**

Plaintiff filed an application for a period of disability and DIB (Tr. 187-96). The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration (Tr. 94-126, 129-31, 133-38). Plaintiff then requested an administrative hearing (Tr. 139-41). Per Plaintiff's request, the ALJ held a hearing

---

[1] Dr. Kilolo Kijakazi is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Kilolo Kijakazi should be substituted for Commissioner Andrew M. Saul as the defendant in this matter. No further action needs to be taken to continue this matter by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

at which Plaintiff appeared and testified (Tr. 33-93). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 12-32). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-6, 184-86). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. § 405(g).

### B.   Factual Background and the ALJ's Decision

Plaintiff, who was born in 1954, claimed disability beginning December 26, 2017 (Tr. 195). Plaintiff completed two years of college (Tr. 217). Plaintiff's past relevant work experience included work as an electrician (Tr. 84, 217). Plaintiff alleged disability due to a stroke, vision issues, balance problems, high blood pressure, and high cholesterol (Tr. 216, 228).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through June 30, 2020 and had not engaged in substantial gainful activity since December 26, 2017, the alleged onset date (Tr. 17). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: glaucoma, loss of peripheral vision, history of stroke, and degenerative disc disease (Tr. 18). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 18). The ALJ then concluded that Plaintiff retained a residual functional capacity

("RFC") to perform medium work, except that he could only frequently use ramps and stairs; could never use ladders, ropes, or scaffolds; could use a step stool; could only occasionally balance; could only frequently stoop, kneel, crouch, or crawl; his vision enabled him to avoid ordinary hazards in the workplace, but he should never be exposed to unprotected heights nor be required to work around large mechanical moving parts; and, in addition to normal breaks, would be off task 5% of the workday due to fatigue (Tr. 19). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 21).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform his past relevant work (Tr. 25). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a linen room attendant, a laundry worker, and a checker (Tr. 26, 88). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 26-27).

## II.

To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable "to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an "impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam) (citations omitted).

### III.

Plaintiff argues that the ALJ erred by (1) failing to find that Plaintiff's obesity constituted a severe impairment and (2) failing to address whether Plaintiff's obesity aggravated Plaintiff's other impairment and impact his RFC.[2] For the following reasons, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.

#### A. Severe Impairment

Plaintiff argues that the ALJ erred by failing to find that Plaintiff's obesity was a severe impairment. According to Plaintiff, his height has been reported between 5'8" and 5'9" tall and his weight has been reported from 200 to 208.4 pounds, with a BMI of 30.3-30.8.

At step two of the sequential analysis, the ALJ considers the medical severity of a claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). Step two operates as a threshold inquiry. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986); *see Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 853 (11th Cir. 2013) (per curiam).[3] At step two of the sequential evaluation process, a claimant must show that he or she suffers from an impairment or combination of impairments that significantly limits his or

---

[2] Plaintiff's argument is not clear from his position in the Joint Memorandum. In the body of the memorandum, Plaintiff argues that the ALJ erred by failing to find that Plaintiff's obesity constituted a severe impairment (Doc. 20, at 9). However, in Plaintiff's statement of relief, Plaintiff states that the "matter should be reversed and remanded with direction to the [ALJ] to address whether the claimant's obesity would aggravate [Plaintiff's] other impairment and impact his [RFC]" (Doc. 20, at 13). Therefore, this Order will address both issues.

[3] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

her physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521, 404.1522(a). "An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel*, 800 F.2d at 1031; *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984) (per curiam). "[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). In other words, an impairment or combination of impairments is not considered severe where it does not significantly limit the claimant's physical or mental ability to perform basic work activities. *Turner v. Comm'r of Soc. Sec.*, 182 F. App'x 946, 948 (11th Cir. 2006) (*per curiam*) (citations omitted); 20 C.F.R. § 404.1521.

Social Security Ruling ("SSR") 19-2p, which discusses the SSA's evaluation of obesity explicitly states that the "a medical source's descriptive terms for levels of obesity . . . do not establish whether obesity is a severe impairment for disability program purposes." SSR 19-2p, 2019 WL 2374244, at *4 (May 20, 2019).[4] SSR 19-2p also states that, although there is often a significant correlation between BMI and excess body fat and that the BMI will show whether the claimant has obesity in

---

[4] SSR 19-2p, effective May 20, 2019, rescinded and replaced SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002) ("SSR 02-1p")). *See* SSR 19-2p. However, SSR 02-1p and SSR 19-2p are substantially similar regarding the ALJ's consideration of obesity in determining a claimant's severe impairment and RFC. *Compare* SSR 02-1p *with* SSR 19-2p.

most cases, such correlation is not true in every case. SSR 19-2p, 2019 WL 2374244, at *3. Indeed, SSR 19-2p goes further, stating that "[n]o specific weight or BMI establishes obesity as a severe impairment within the disability program." 2019 WL 2374244, at *2. Rather, the ALJ conducts "an individualized assessment of the effect of obesity on a person's functioning when deciding whether the impairment is severe." SSR 19-2p, 2019 WL 2374244, at *4.

Here, the ALJ found that Plaintiff's diabetes mellitus, hypertension, cocaine abuse, hyperlipidemia, erectile dysfunction, obesity, right eye cataracts, degenerative joint disease, vitamin d deficiency, hepatitis C, hypokalemia, fatty liver, renal cysts, colon polyp, enlarged prostate, and hemorrhoids as not severe in that they cause no more than minimal vocationally relevant limitations (Tr. 18). Notwithstanding, the ALJ stated that she considered all of Plaintiff's medically determinable impairments, including those that were not severe, when assessing Plaintiff's RFC (Tr. 18). Contrary to Plaintiff's argument, the presence of an elevated BMI does not equate to the finding that Plaintiff's purported obesity constituted a severe impairment. Although Plaintiff was reported as obese in a medical record (Tr. 1335) due to his height and weight (5'9" and 207 pounds), the record also noted that he was not in acute distress at the time (Tr. 1335). The ALJ was therefore not required to conclude that Plaintiff's elevated BMI provided the basis for a finding that Plaintiff was obese or that such obesity constituted a severe impairment at step two.

Regardless, the finding of *any* severe impairment, whether or not it results from a single severe impairment or a combination or impairments that together qualify as severe, is enough to satisfy step two. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (citations omitted); *see also Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 892 (11th Cir. 2013) (per curiam) ("[T]he ALJ determined at step two that at least one severe impairment existed; the threshold inquiry at step two therefore was satisfied."); *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824-25 (11th Cir. 2010) (per curiam) (noting that an ALJ's failure to identify an impairment as severe, where the ALJ found that the plaintiff suffered from at least one severe impairment, constituted harmless error and was, in fact, sufficient to meet the requirements of step two, and additionally noting that nothing requires the ALJ to identify, at step two, all of the impairments that could be considered severe). Here, the ALJ determined that Plaintiff had the following severe impairments: glaucoma, loss of peripheral vision, history of stroke, and degenerative disc disease (Tr. 18). Accordingly, since the ALJ determined that Plaintiff suffered from multiple severe impairments at step two, and thus proceeded beyond step two in the sequential analysis, any error in failing to find that Plaintiff suffered from other severe impairments is rendered harmless. *Gray*, 550 F. App'x at 853-54; *Packer*, 542 F. App'x at 892; *Heatly*, 382 F. App'x at 824-25.

**B.     RFC**

Plaintiff argues that Plaintiff's obesity could have aggravated Plaintiff's other impairments as his weight and BMI were categorized as obese and the second state

agency consultant's opinion that Plaintiff could perform activities consistent with a light exertional level, which the ALJ found unpersuasive, could have been reasonably derived from the consultant's consideration of Plaintiff's obesity

Although an ALJ must consider a claimant's obesity when evaluating disability, it is Plaintiff who bears the burden of proving that his obesity results in functional limitations and that she was "disabled" under the Social Security Act. *See* 20 C.F.R. § 404.1512(a) (instructing claimant that "you have to prove to us that you are blind or disabled [and you must] ... submit all evidence known to you that relates to whether or not you are blind or disabled"). The SSA has acknowledged that obesity can cause limitation of function in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling, in non-exertional functions such as climbing, balancing, stooping, kneeling, crouching, and crawling. SSR 19-2P, 2019 WL 2374244, at *4. Accordingly, under SSR 19–2p, an RFC assessment should take account of the "effect obesity has upon the person's ability to perform routine movement and necessary physical activity within the work environment." 2019 WL 2374244, at *4.

Here, the ALJ evaluated the state agency consultants' opinions regarding Plaintiff's physical impairments. The ALJ noted that the initial consultant found that Plaintiff could perform activities consistent with a medium exertional level with several visual, environmental, and postural limitations (Tr. 23); (Tr. 96-105). However, the ALJ found that Plaintiff warranted greater postural limitations than the consultant found based on the record (Tr. 23). The ALJ also found that record

showed that Plaintiff warranted fewer environmental restrictions than the consultant opined (Tr. 23). The ALJ noted that the second state agency consultant opined that Plaintiff could perform activities consistent with a light exertional level with several postural limitations (Tr. 23-24); (Tr. 108-19). The ALJ found that this was not consistent with the record (Tr. 23). Additionally, the ALJ noted that this portion of the opinion was not fully supported by the consultant's own assertions (Tr. 23). For instance, the consultant opined that Plaintiff could complete daily living activities with some rest periods, that Plaintiff's records showed relatively benign objective findings and conservative degree of treatment (Tr. 117). There is no mention of the effects of Plaintiff's obesity on his functional limitations in the second consultant's opinion.

Moreover, outside of general notes of healthy diet and exercise, the record does not demonstrate any complaints from Plaintiff regarding the effects of his obesity on functional limitations, or from medical providers alerting to the effects of the same. In fact, at the hearing, when the ALJ asked Plaintiff what he was doing to address his diabetes, blood pressure, and high cholesterol, Plaintiff responded with the following:

> [Plaintiff]: Yes, yeah. I'm taking -- for the diabetes, I'm taking metformin. I start -- they started me with metformin and I'm really cutting out of carbs and all that and everything that's bad for me and I lost 12, 12 to 13 pounds. And so –
>
> [ALJ]: Wow?
>
> [Plaintiff]: So when I go back to the doctor, he's probably going to be proud of me for, you know, losing the weight and I haven't I need to get him to check my ACL [sic] 1 or whatever 's called.

11

(Tr. 56). Thus, even at the hearing, Plaintiff failed to point to his obesity as a significant cause of any functional impairment. *See James v. Barnhart*, 177 F. App'x 875, 877 n.2 (11th Cir. 2006) (per curiam) (ALJ did not err in failing to find obesity to be a severe impairment where, during the plaintiff's own testimony at the administrative hearing, the plaintiff did not complain that obesity was a functional impairment).

While obesity can cause functional limitations in some individuals, Plaintiff has merely cited his weight and offered generalizations about the *possible* effects of obesity (Doc. 20, at 8-9). For instance, Plaintiff cites to declining functional capacity association with chronic worsening of dyspnea on mild to moderate exertion (Doc. 20, at 9). However, there is nothing in the record that links Plaintiff's obesity to the chronic worsening of dyspnea. Plaintiff alleges no facts and points to no evidence in the record to support his assertion that his obesity places significant limitations on his ability to work. And the objective medical evidence of record does not demonstrate that any treating or consultative physician placed limitations on Plaintiff due to his obesity. Therefore, Plaintiff has failed to explain how his obesity causes further limitations than those found by the ALJ, and he has not identified any reliable medical opinions supporting any limitations beyond those stated in his RFC that result from his obesity.

For the foregoing reasons, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.

**IV.**

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is AFFIRMED.

2. The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 29th day of August, 2022.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

cc:  Counsel of Record